Hillsborough,
May 2, 1916.

### MILFORD QUARRY & CONSTRUCTION COMPANY *v.* BOSTON & MAINE RAILROAD.

A plaintiff may maintain an action within one year after a voluntary nonsuit, for all causes of action arising within the time limited for the inception of the original action, under P. S., *c.* 217, *s.* 9.

CASE, for the failure of the defendants to furnish the plaintiffs reasonable and equal terms, facilities and accommodations. Writ dated December 19, 1914. Plea, the general issue with a brief statement setting up the statute of limitations. October 1, 1911, the plaintiffs brought an action against the defendants upon the causes of action now sued upon. The same was continued from term to term until January 23, 1914, when, further continuance being denied, the plaintiffs voluntarily became nonsuit. The question whether by force of *s.* 9, *c.* 217, P. S. causes of action arising more than six years before the commencement of the present action are not barred by the general statute of limitations, was reserved by *Sawyer,* J., at the September term, 1915, of the superior court and transferred without a ruling.

*Bertis A. Pease* and *Martin & Howe,* for the plaintiffs.

*Charles J. Hamblett* and *Marshall D. Cobleigh,* for the defendants.

PARSONS, C. J.  The statute of limitations passed June 16, 1791 (Laws, *ed.* 1792, *p.* 158), is identical as to the question now presented with the English statute of limitations, 21 Jac. I, *c.* 16, *s.* 4 (1623). The statute of 1791, after prescribing the limit of time within which certain personal actions might be brought, contained the following proviso: "*Provided always,* That if upon any of the said actions or suits, judgment be given for the plaintiff, and the same be reversed by writ of error, or a verdict pass for the plaintiff, and for matter alledged in arrest of judgment, the judgment be given against the plaintiff, that he take nothing for his plaint, writ or bill, that in all such cases the plaintiff, his executor or administrator, as the case shall require, may commence a new action or suit, from time to time within a year after such judgment reversed, or such judgment given against the plaintiff, and not after." Similar

language is to be found in the early statutes of many of the states. Under this language it has been held that cases in which without the plaintiff's fault the action has been defeated without destroying the right of action were within the equity of the statute, although not within its terms, because no judgment had been given or verdict passed for the plaintiff.    It was also held that, since reversal by writ of error and in arrest of judgment were mentioned in the act, it was to be inferred that the legislature did not intend to include cases of nonsuit and that equity did not require the extension of the statute to cases where the judgment against the plaintiff was due to his own fault.    But these authorities are not applicable to the present case.

Although the proviso of the act of 1791 was reënacted in terms June 30, 1825 (Laws, *ed.* 1830, *p.* 77), in the revision of 1842 a material change was made.    The proviso became *s.* 10, *c.* 181, R. S., reading as follows: "If judgment shall be rendered against the plaintiff, in any action commenced within the times before limited, or upon any writ of error brought thereon, he may commence a new action thereon within one year thereafter, in case his right of action is not barred by such judgment."    The section now reads: "If judgment is rendered against the plaintiff in an action brought within the time limited therefor, or upon a writ of error thereon, and the right of action is not barred by the judgment, a new action may be brought thereon in one year after the judgment."    P. S., *c.* 217, *s.* 9.    The only changes since 1842 are verbal, apparently made to satisfy the literary taste of the revisers of 1867 and 1891. Under this section the sole test of the right to bring a new action within one year after the judgment against the plaintiff in one brought within the time limited, is whether the right of action is, or is not, barred by the first judgment.

It is conceded that judgment upon voluntary nonsuit is not a bar to the right of action.    *Ordway* v. *Railroad,* 69 N. H. 429, 433.    The plaintiffs, therefore, can maintain this action for all the causes of action as to which the action for the same causes, brought Oct. 1, 1911, was brought within the time limited therefor, *i.e.*, as to all the causes of action arising within six years before its inception.    P. S., *c.* 217, *s.* 3.    Sections 3 and 9 of the chapter, taken together, provide all such personal actions may be brought within six years after the causes of action arose or within one year after a judgment against the plaintiff in an action brought within the six years, if such judgment does not bar the right of action.    Although this section was

put on the statute book nearly three quarters of a century ago, no adjudications as to its meaning have been found. Hitherto, it has apparently been thought too plain to require construction. In *Davis* v. *Dyer*, 56 N. H. 143, an attempt was made to apply the statute to a case where an award for the plaintiff had failed on technical grounds. In discussing the effect of the statute the court, by Judge Ladd, says of it: "A party is protected although the technical judgment against him may be due to his own carelessness or fault." *Ib., p.* 145. While this statement is not decisive as being a point involved in the decision, it is sufficient answer to the claim now made, that the plaintiffs' fault in getting into a situation where they were obliged or thought it wise to take a voluntary nonsuit, debars them from the new action expressly given by statute.

The authorities cited as to cases within the English statute, or its substantial reënactment in this country, are not in point. The reasoning of *Lawrence* v. *Coal Co.*, 48 W. Va. 139, cited by the defendants sustains their contention. But the logic of the argument that a case within the express terms of a statute is to be held not within its purpose, because not within the terms or equity of the statute prior to its change by the legislature, is not of such convincing force that it must be followed. The argument made in Tennessee, that when the legislature changes a statute so as to include within its terms what was not within the terms or held to be within the equity of the statute before the change, it intends to change both the language and the judicial construction, seems the sounder logic. Under a legislative change, substantially similar to that which took place here in 1842, it is there held a new suit may be maintained after judgment upon a voluntary nonsuit. *Hooper* v. *Railroad*, 106 Tenn. 28,—53 L. R. A. 931. "The new action in such case must be brought within one year after the termination of the action, which was commenced within the time limited by law for the bringing of such action, so that the indefinite succession of suits upon the same cause of action cannot result from the construction given to the act, as suggested by counsel." *Memphis &c. R. R. Co.* v. *Pillow*, 9 Heisk (Tenn.) 248, 252.

The purpose of this legislation is well expressed in *State Bank* v. *Magness*, 6 Eng. (Ark.) 343, 346: "It is quite apparent that the intention of the framers of the act was to secure that class of suitors from loss, who, from causes incident to the administration of the law, are compelled to abandon their present action, whether by their own act or the act of the court, when either would leave them a cause

of action, yet undetermined, by giving them a reasonable time in which to renew such action."

                                                        *Case discharged.*

All concurred.